May it please the Court, Jared Bona for Glenn Guillory. I am here before you to respectfully request that you reverse the decision below and order an acquittal. Under substantive antitrust law, the government failed in its burden to prove that Guillory agreed to a per se antitrust violation. The government had wiretaps, photographs, undercover officers. This was a major investigation. They infiltrated the entire foreclosure process, yet they did not introduce any direct evidence that Guillory actually agreed to rig bids for the primary foreclosure auctions. Sotomayor, wasn't there testimony from witnesses that during the foreclosure auction process, Mr. Guillory engaged in nonverbal signals to others and agreed not to and stopped bidding once those nonverbal signals were given? No. There's no such testimony? There's no such testimony. There's speculation.  The question is what people said, not what they said. I'll say, didn't the government present witnesses who said that during the foreclosure auction process, Mr. Guillory, as others, gave winks and nods, if you would, and once winks and nods were given, everybody stopped bidding except the one person designated? The government, correct me if I'm wrong, but there is my understanding is there is no such testimony of Guillory giving the winks and nods. There are a couple instances where he did. Is there testimony of people giving the winks and nods to Guillory and everybody else stopped bidding? No. There is evidence of the government — there is evidence of a witness. For example, I'll go into specifics. Mr. Rock, he did not observe Guillory rigging any bids. He did not observe these sort of signals. He did observe that Guillory had a conversation with Mr. Galloway, but when asked about that, he said you'd have to ask Mr. Galloway about his conversation with Guillory. There was not any direct evidence. There was speculation. There were assumptions. I'm not asking about direct. What I'm asking is, was there evidence from which a reasonable juror could infer that at the auction, Mr. Guillory engaged in conduct that showed that he'd agreed with other people that bidding would stop? No. There were instances where Guillory would maybe start bidding and not continue bidding. And wasn't there — But that's consistent with independent conduct. I understand. Wasn't there also evidence that he stopped bidding after other people gave nonverbal signals? If that's the case, that would also be consistent with independent conduct, because Mr. Guillory was a realtor, represented a number of different clients, and there could be any number of reasons why he would — If you're drawing, you see, the inference in your favor, couldn't the jury draw the opposite inference? Well, you know, that's — Wouldn't that be a reasonable inference? That's actually a great point. Under substantive antitrust law, no. Well, counsel, there is a basic principle that in reviewing the sufficiency of evidence, we are required to consider all of the evidence in the light most favorable to the jury's verdict of guilt. Yes. And so if there is — and there also are venerable cases saying that circumstantial evidence is just as sufficient as direct evidence of someone saying, you know, this is what he said, or I have a photo of him doing this. So if you take those two principles, how is it that the evidence is still insufficient in your view? If this were a non-antitrust case, I would not be making this argument. Under substantive antitrust law, and the TW Electrical Service case said there are special considerations in antitrust, and this is well-established. When there is — let's talk about circumstantial evidence. When there is circumstantial evidence, the government — when it's based on that, the government must present evidence that excludes the possibility of lawful alternative explanations or independent conduct. If the government doesn't do that, and they didn't do it here, then no reasonable fact-finder can conclude that the defendant conspired to violate the antitrust laws. Well, wait. Take — take — even under that, take Judge Graber's question. If the jury believed that at the auction, Mr. Guillory responded to nonverbal cues from his co-conspirators to either keep bidding or stop bidding, and then he — he — the round stuff is not — is not contested. He admits he participated in the subsequent rounds. Correct. Why isn't that an — if believed, why isn't that enough to exclude the possibility of innocent conduct? Well, I guess the first response is there's — there's no such evidence. If there were evidence that — if there were direct evidence that Guillory participated or responded to — Well, see, but you keep saying — you keep saying direct evidence. Direct. I mean, isn't that what — what the evidence seems to show? So tell me if I'm wrong. Nobody says, we had a meeting and we decided that'd be easy. No. What they have here is a — is — is people who say, we nodded and winked, and — and Mr. Guillory either kept bidding or stopped bidding. But — And they're the same people who participated in the rounds. Why — if believed, why isn't that enough evidence to show that he had agreed to — to — it's hard to say these words — rigged bids. I was going to say rigged bids. I was worried about the same thing this morning, Your Honor. It — in this case, there was no witness, no piece of evidence connected Guillory to any of those signals. And you have a similar — There was — there was, however, some — there was at least one witness who said that only members of the conspiracy to rig bids were permitted to participate in the rounds. Wasn't there at least one witness who said that? I'm not — you — you could — I don't — If you could refresh my recollection, Your Honor, I — I don't recall who the witness was, but it seemed to me that there was that — They — I don't — And if that — if that — if there was such evidence, I may be mistaken about that, and I hope the government will correct me if I'm wrong about that as well. But if — if someone said, listen, this is how it worked, the co-conspirators decided this and had all the hand signals like, you know, in baseball, and — but only the people who were members of the conspiracy could come to these after-parties, would — would that be sufficient? Well, I think — I think I might — I think I might understand what you're referring to. There were some witnesses that assumed, presumed, as — as maybe the Court and — and prosecution did, that because Guillory participated in the rounds, he must have been part of the overall scheme. But in this case — Well, that's why I'm asking, was it their testimony that only the conspirators attended the rounds? Guillory may or may not have been the only — Without names attached. Without names attached. Someone — I think it was an explanation of the process, saying that the conspirators would then go — and I may be mistaken about that. I mean, it — there may have been a description of who started at the auction and then, you know, the same general group of people would be at the rounds, but I don't think there was anything quite as affirmative. And I can explain, I think, maybe some — some context. Guillory, as — as he testified to, started out, you know, at least in the 2002, 2003 area, he was one of the people showing up for these foreclosure auctions. He was a realtor. He was a real estate investor. Along with some of these other guys that were either admitted to or were convicted of participating in the primary auction. Then there was a housing crisis and it went from a few foreclosures a day with the same general group of people to just mass chaos, hundreds of them. And a whole new group of people, tons of people, everybody was coming in trying to make money and it was chaotic. Guillory, of course, knew those same people. And he used — you know, he's a realtor, he wanted to purchase properties and the rounds were a convenient way for him to do so. There were information issues, he couldn't be in multiple places at once. He could go in and purchase a piece of property that maybe he missed the initial auction. Or maybe the — one of the purchasers of it had done some research, one of the other That sounds like your — I didn't read it, but, you know, like a good closing argument to the jury, right? To make all the inferences in your favor, but the jury didn't buy it, did it? But if this were just a criminal case without the antitrust aspect to it, it would be harder for me to make this argument. This case shouldn't have gone to the jury because of the lack of direct evidence, because the prosecution, the government, was not able to exclude the possibility of mere independent conduct under substantive antitrust law. And there are tons of summary judgment cases you guys have probably been part of. I don't read the cases the way you read them. Your position almost seems to be that in an antitrust, at least in a criminal case, the verdict must be supported by direct evidence and circumstantial evidence won't do. I don't think that's the law. I don't read the cases the way you do. It can be based on circumstantial evidence, but some of that circumstantial evidence has to exclude the possibility of independent conduct. And that could be plus factors, it could be a number of things. And it can be circumstantial. If the evidence is there, and I think it is, you know, the jury can accept it. Because you don't accept the same inference, it doesn't mean there's no evidence. It's not a decision by me whether I accept it or not. It's that there isn't evidence that excludes the possibility of lawful conduct. Let me ask a slightly different question. Yeah. You ask us to take up whether Guillory's trial counsel was ineffective. Yes. One reason you say he was ineffective was because he failed at the close of all the evidence to seek a judgment of acquittal. Correct. That's one of the reasons. Okay. Therefore, isn't that argument, isn't the argument that the evidence is insufficient waived? It is not. Well, if you go to the ineffective assistance of counsel. Right. I can go into that set of arguments. Put that aside. I mean, we all concede that counsel did not, you concede counsel did not, at the close of the government's, at the close of all the evidence, renew a motion for a Rule 29 acquittal, right? Yes. And then you go. Doesn't that foreclose you? Absent the ineffective assistance, you go into the plain error. Put aside the ineffective assistance. Put it aside. Doesn't that, let me finish. Yes. Doesn't that prevent you from raising on appeal the insufficiency of the evidence? I think it requires me to go into the plain error framework. Okay. And I think we'd survive that. It's such an obvious error. It's an error that would change the result. It affected substantial rights. Guillory received a lack of due process for not having that request. And certainly that would affect the fairness, integrity, and public reputation of judicial proceedings. It's such a big error. I mean, who doesn't make a motion in these circumstances for acquittal? Did you want to save some rebuttal time? I would. Yes. And I have some other issues to go into. But I can wait until rebuttal if this Court permits it. Well, it's up to you. You can use your time or save it. You know, we make the arguments about the government's statement, rounds are illegal. We make the argument about the jury instructions. I think that's pretty clear from the briefing, although I'm happy to answer questions on it. But there is the motion in limine. It's not a throwaway argument. And there are other cases where, in fact, a case came down, I think the government will talk about it, the Joyce case that says bid rigging is a per se antitrust violation. We're not trying to dispute that. I'm not trying to change 50 years of antitrust law. What we're arguing is that when you have a larger framework, and this larger framework includes the rounds, which aren't necessary to bid rigging, which aren't necessary to bid rigging the primary auction. When you have that larger framework, there is a possibility that it isn't a bid rigging situation. You might have, the bid rigging could be ancillary to a larger pro-competitive purpose. And my burden here is not to show that that's the case, but that the judge should have allowed Guillory to show it. And he had expert testimony that he was going to use. And there are a number of ways, which I won't get into now. We get into it in the briefing on how he could show that. That's similarly Joyce's argument, isn't it? No, it's different. Joyce argues that because of the nature of real estate, because of various other sort of reasons specific to the market, it shouldn't be a per se rule. What we argue is that because our case centered so much on the rounds, and the rounds, because of the rounds, it was a larger framework. It wasn't just the straight, naked bid rigging of the primary auction. When there's a larger framework, you have to determine, or you have the right to say that the bid rigging is ancillary to a larger pro-competitive purpose. And I believe Guillory could have done that here. He didn't have the opportunity. My burden is not to show that that's the case here without the evidence, but to show that Guillory should have had that opportunity. Does that make sense? No, it doesn't. Because that means, see, I mean, that's a backdoor argument to say bid rigging is a rule of reason case. That's what it comes down to. Even price fixing, even market allocation is not always per se. Isn't that what your argument comes down to, that this is a rule of reason case? My argument comes down to when the per se... You're saying if the bid rigging process is sufficiently complicated, if the conspirators are really clever, it isn't really bid rigging because it's bigger than that, and therefore it isn't a per se violation. But that doesn't really follow. No, the ancillary restraints doctrine is a more complicated inquiry that isn't just you have something else on there, you get off scot-free. No, there are other things that need to be shown. You've used up your time, but I want to ask you a question about a very specific piece of evidence. I'm reading Ms. Barta's testimony, and it's on SER 204. And the question is, you ended up winning the round for, and you won the public auction. Why would you agree to make a payoff when you public off, and why not just keep the property after the public auction and not pay anyone? And the answer is, because we reached an agreement with Glenn, that's Mr. Guillory, that he would be part of the round if he stopped bidding at the public auction. That's direct testimony that your client agreed to stop bidding at the public auction. Why isn't that sufficient to establish the crime here? Ms. Barta says we reached an agreement with Glenn that it would be part of the round if he stopped bidding at the public auction. I think the context of that, and I know we're running behind time, so I'm not going to look it up, is that this was based on the call with Mike Marr and that he assumed that they had worked something out. There was a, and it was based on speculation and assumption as to. Okay. So there's not sufficient foundation for her testimony, is what you're saying?  Thank you, counsel. At the very least, that's my recollection. Thank you. Yeah, thank you. Good morning. Mary Helen Wimberly for the United States. May it please the Court. This morning I'd like to discuss three issues, the sufficiency of the evidence on the record, the legal standard for the sufficiency of the evidence, and then the remaining issues raised by this appeal. We disagree with the statements that Mr. Bona made about the record in this case. For one, Judge Hurwitz, to respond to the question you asked about Wesley Barta's testimony, that was direct testimony concerning Mr. Guillory's participation in bidder bidding. So tell me what testimony you have, and put aside the rounds. Let's assume for purposes of discussion that merely conducting the rounds by itself would not establish it, and I trust that. Sure. I'll start with Mr. Barta. This is SCR 204, which I believe you had just referred to. Why not just keep the property after the public auction and not pay anyone? And he's asking because Mr. Barta had won the property at the public auction and then was also participating in the round.  Now, Mr. Bona said that was based on speculation, based on Mr. Guillory witnessing a call with a third party. Well, he's actually referring to a conversation that took place at a round, not a conversation that took place during the public auction. Mr. Barta is testifying to his direct experience with Mr. Guillory at the public auction. SCR 198 for Mr. Barta. For this property, was there an agreement to stop bidding at the public auction? Answer, yes. Question, would you have a round without an agreement to stop bidding at the public auction? Answer, no. There would be no point to it. I'll move on to Mr. Powers, another of the four co-conspirators who testified at trial. This is SCR 250 to 251. Question, were there people you reached agreements with multiple times to stop bidding? Answer, yes. Question, including the defendant. Answer, yes. And he gave an example at SCR 261 to 262 of 2543 Hamilton where he paid defendant over $3,000 in cash. I want to emphasize that, in cash. And he said it was to stop bidding. Mr. Guillory makes a number of arguments about Mr. Powers' testimony that it wasn't reliable because it wasn't specific enough. But those are jury arguments about credibility that, as this Court has recognized, is not cognizable on a sufficiency challenge. And there's still more. Mr. Bishop, the third co-conspirator. And this is the transcript at page 333. Question, did Glenn Guillory take any other actions consistent with an agreement to stop bidding? And just to give this some context, this is one of the circumstances where Mr. Guillory and Mr. Bishop had agreed to bid rig through an intermediary, Mike Galloway, at the public auction. And Mr. Bishop testified to what Mr. Galloway said about his agreement with Mr. Guillory. So the answer to, did Glenn Guillory take any other actions consistent with an agreement to stop bidding? Answer, I'm sure we made eye contact and, you know, a little nod. But it was basically, okay, stop bidding. Because up until that point, he had done a few bids. He gave an example of 90 Pleasant Valley, where he had researched the property for personal use. He reached the agreement, as I said, with Mr. Guillory through an intermediary, Mr. Galloway, at the public auction to stop bidding. And this is discussed at SER 337 to 345. Then he paid Guillory over $3,000 in cash. Mr. Guillory said that was actually part of some partnership, that they were going to go in and buy the property together. But if you look at SER 341, question, have you ever done a partnership with Glenn Guillory? Answer, no. Then if you look at SER 345, question, what were you paying Glenn Guillory for? Answer, that was part of our agreement, was that as he stopped bidding there at the public auction, and then we did our round, so to follow through, I owed him money from the round. Question, did you have any other reason to pay Glenn Guillory? Answer, no. I had earlier asked opposing counsel whether there was testimony that the participants in the rounds were the co-conspirators, that it was the same group and not extra people at the rounds. Was I mistaken about that? You were not mistaken, Judge Graber. That is correct. Bishop at SER 318, for example, question, who participated in the round? Answer, just the people that were a part of the bid rigging group at the public auction for that property. And I can give you a few more sites if you would like. Bishop also confirmed at SER 327. Barda at SER 181. And Powers at SER 253 to 254. The fourth co-conspirator, Charles Rock, also testified that he participated in bid rigging through an intermediary with Mr. Guillory. He paid Guillory $4,000 by check. When Mr. Rock tried to give Mr. Guillory a check, he used an expletive and said, are you crazy? And it's made it he didn't want a paper trail. Mr. Guillory argued below that this was, again, another partnership in the property. SER 123, question, was there any kind of partnership here with Mr. Guillory, Mr. Galloway, or Mr. Dittmer? Or were you taking title of the property on your own? Answer, I was taking it on my own. SER 129, question, is there any other reason why you would have owed the payment for an agreement not to bid against you? Answer, no. So let's assume for a moment that all you had was the rounds. Would that be sufficient to... I'm sorry, all I had was... All you had were the rounds. You had a bunch of people who got together and agreed that they would conduct a post-auction auction. And you didn't have any evidence that they'd previously agreed not to bid. Would that violate the... Oh, if there's no evidence of an agreement not to bid previously, I don't believe so, no. The Sherman Act wouldn't be violated simply by conducting rounds. Not simply by conducting a round, but... So what do you do with the closing argument where you're, where the government says rounds are illegal? Because that was the theory of the case based on the testimony that there was no reason for the round except for bid rigging. Barta, Powers, and Rock testified to that. All four co-conspirators, Bishop, Barta, Powers, and Rock testified that the So the round was sort of the second stage of the bid rigging. So in context, that's a statement that the rounds are illegal because there was an agreement that led up to the... Which is exactly how it was said in rebuttal at SCR 101. The statement that Mr. Guillory quotes, and rounds, rounds are illegal, next sentence, rounds exist because there is an agreement to stop bidding at the public auction. Wesley Barta told you that. All of the witnesses told you that. That's why you have a round, because you had an agreement to stop bidding. Otherwise, there's no reason to have a round. If you look later in the rebuttal, SCR 102, the defendant knew, he knew the rounds were how people got paid for agreements to stop bidding. And then, just to be clear, SCR 107, I want you to keep in mind that the agreement to stop bidding at the public auction, that's the crime. And then later, the rounds, of course, they're how people got paid for that agreement. So the prosecutor accurately testified, or accurately summarized the evidence. In addition, the jury instructions were entirely sufficient in this case, because they explain repeatedly that it is the agreement to rig bids that is the crime. They also further clarify, this is at ER 143, evidence of similarity of business practices of the defendant and alleged co-conspirators does not alone establish an agreement to rig bids. But in a later case, you proffered an instruction, right, about rounds? In a later case, we did not. The Marr defendants did, who were tried. And the judge gave it? The judge did give it. Now, don't you think in light of the argument to comment by the Justice Department attorney that rounds were illegal, that that calls for some kind of curative instruction? No, because the statement was not misleading. The statement was made with clear follow-up that the reason the rounds were illegal was they were the payouts for the bid rigging agreement. So there was nothing to clarify. And because the jury instructions stated clearly that, for example, a conspiracy to rig bids is an agreement between two or more persons to eliminate, reduce, or interfere with competition for something that is to be awarded on the basis of elimination of a form of competition, and the agreement is the crime. So over and over again, the jury instructions reiterated what the crime was. And as I read earlier, from later in the rebuttal, the prosecutor said, I want you to keep in mind that the agreement to stop bidding at the public auction, that's the crime. So it actually doesn't matter what happened after you reached the agreement. What matters is that you reached the agreement to stop bidding at the public auction, and then contextualizing the rounds further. And these rounds, of course, they're how people got paid for that agreement. Now, turning just briefly, hopefully, to the legal standard for sufficiency of the evidence, it is no different in criminal antitrust cases than it is in regular criminal cases. The N-citric acid litigation case that counsel referred to significantly in his reply brief stands for a far narrower proposition, and I'm quoting that opinion at 1-1-0-2. A Section 1 violation cannot, however, be inferred from parallel pricing alone. That's just like this Court's case law saying, for example, mere presence near contraband cannot alone support an inference of knowing possession of contraband, or mere association with conspirators does not show participation in the conspiracy. It's a narrow rule of what permissible inferences may be drawn, and it certainly doesn't apply here, which is not a parallel pricing case. Now, to turn briefly to the third point I was going to raise, which is the last set of arguments, for ineffective assistance, because ---- Sotomayor, why would we reach that? It is very rare that our Court will reach an ineffective assistance claim on direct appeal, because ordinarily it's important to hear from the lawyer as to why decisions were made or not made. Why would we reach that? In this case, because the plain error arguments fail at Phase 1, Step 1, there is no error. Well, but if we find that, we just don't need to get to these arguments, right? If Mr. Guillory may have all sorts of ineffective assistance at counsel arguments, he should raise them in a 2255, not ---- That is certainly one avenue the Court could take. The Court could also ---- That's the avenue we always take, isn't it? Right. Well, most commonly, yes. The Court could also ---- Why wouldn't we do that here? Well, I think the simplest way forward would be to say because there was no error, there can be no prejudice for any of the arguments of ineffective assistance. But we don't know what ---- the problem is that ordinarily an ineffective assistance claim allows the defendant to raise a broad range of possible claims, and it allows the lawyer to respond to those. Right. And it's, as I say, extremely rare that we've ever reached these. And I don't understand the justification for doing it in this case. Except the claim here is different from most ineffective assistance claims in that they're based on discrete acts or lack of action at the trial. Correct. They're not like, well, you know, the counsel should have investigated that or, you know, done this or considered these kinds of things, which rely on matters outside the record. Here, it's more, isn't it, more squarely addressing the counsel's actions at the trial. Right. And if the Court were to find no error, then there necessarily would be no prejudice from the ineffective assistance. So it effectively would be ---- And I guess what I'm saying is that if counsel then filed a 2255 saying, well, he was ineffective because he didn't move for a Rule 29 motion of acquittal at the end of the evidence, that would probably be barred by our direct appeal opinion. That's correct, Your Honor. Which said that there was sufficient evidence. But I'm not sure why ---- still not sure why we should take up ineffective assistance. Well, I'm not going to press you to take it up for sure. I'm just going to say that ---- Normally the government's here arguing the other side, they're saying. Yes. And we do agree if the Court were to disagree with us on the there is no error and we're going to the later prongs of plain error, then it should. Well, let me ask this so that I fully understand your position. If we were to reach the specific ineffective assistance claim here, which does relate to alleged errors in handling what already happened at the trial, would that preclude a later claim of ineffective assistance on other issues that would require further development, let's say incomplete investigation or failure to find an expert or something like that? I have not researched that issue. So I can't ---- I don't know the answer to that question. Frankly, that's what I worry about. That's my concern, too. You don't get two 2255s. Then it might be a successive petition with a different standard. That's my concern. Well, I don't think it would be a successive petition. But again, that's the risk defendants take in asking you to resolve an ineffective assistance claim on Direct-to-Prue. But if I could turn briefly to the motion in Lemonnet issue that counsel raised at the end of his argument. Judge Tshishima, you're exactly right that he's trying to turn this into a rule of reason case. He's, as we discussed earlier, Joyce, the court said that bid rigging is a per se violation and then this is the opinion at five and that was released this morning and we gave opposing counsel a copy. Any business justification for the detendant's conduct is neither relevant nor admissible. And what counsel is saying was excluded was expert testimony that would have said the prices fixed through bid rigging were reasonable, which is under Catalano, among other decisions, something that is flatly not allowed in per se cases. And as to the ancillary restraints doctrine, it's still unclear what the theory of ancillary restraints is that Mr. Guillory is positing. But he certainly hasn't indicated any kind of joint venture or explained how bid rigging would be ancillary to that joint venture. So having not come forward with a cognizable theory of ancillary restraints, he can't be said to have, the district court cannot be said to have erred from excluding the evidence, which in our primary argument on that issue, of course, is that the district court did not exclude any such evidence. Thank you, counsel. Thank you. Mr. Bonner, you used your time, but you may have a minute for rebuttal. I guess I better be quick. On ineffective assistance, one of the issues, besides the fact that I think we met the standard, is that it's an 18-month sentence. So the feasibility of being able to accomplish that within that time is pretty low. As Your Honor pointed out, records sufficiently developed on these very narrow areas. As I understand it, the sentence has already been served? Yes. By the time we're done here. So what's the difference whether we take it up now or you take it up in a 2255? Well, if you take it up later, then he may already be done. He's not in prison right now. He's already done. So what difference is it whether we take it up now or later? The difference is he'll be in prison if you take it up later. And his term may be almost over, at least partially completed. Substantially completed by the time we're... He hasn't been incarcerated yet. No, he's not incarcerated right now. And given that we've met the standards, even though it's rare, we've met the standards for ineffective assistance of counsel. In this specific instance, the mistakes were big enough. What's your best ineffective assistance of counsel argument? The best ineffective assistance of counsel argument is that he failed to object to obvious legal misstatements by the prosecution. Rounds are illegal. That he failed to request a clarifying instruction on rounds that the judge gave and the prosecution agreed to in other cases. The whole case was about rounds. And the vast majority of evidence was about rounds. And there was nothing in the jury instruction clarifying that. Okay. As for your best argument... And then... Let's see. Counsel, you've exceeded your extra time. Thank you, Your Honor. Thank you. We appreciate the arguments of both counsel. And the case just argued is submitted. We will take about a 10-minute break before hearing the final set of cases.
judges: Tashima, Graber, Hurwitz